# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN TAXI DISPATCH, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN METRO TAXI & LIMO CO. ) <br> DAVID ZAYA, MORIS ZAYA, ) <br> MIHAI POPESCU, ROMEO WARDA, ) <br> FRANK THMUD, SEARG AKEBA, ) <br> JAY ABHISHEK, ALI MARWIN, ) <br> EDMON GABRLIA, DAVID EHEIN, ) <br> NIKOLAY TANCHEU THAER SELAMAN, ) <br> BEMGEN MECHO, GEORGE TANCHEU, ) <br> YOUSEF KITANA, AND THAER AWAD, ) <br> ) <br> Defendants. ) | No. 07 C 2602 <br><br> Honorable Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Taxi Dispatch, Inc. ("American Taxi") brought this action against American Metro Taxi & Limo Company ("Metro") and sixteen individual defendants, alleging federal trademark infringement, unfair competition under the Langham Act and common law, violation of Illinois' Uniform Deceptive Trade Practices Act, violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, and unjust enrichment. Metro defaulted, and Plaintiff now moves for entry of a permanent injunction and an award of "legal fees and defendants' profits" against Metro. Given the nature of this motion, the Court treats it as a motion for entry of default judgment.

## BACKGROUND

**I. Plaintiff's Complaint**

American Taxi is an Illinois corporation that provides taxi dispatch services to over 800

taxis in the Chicagoland area. (R. 111-1, Am. Compl. ¶¶ 1, 17.) American Taxi has used the service mark "American Taxi" since 1975, and it currently uses the mark on the company's letterhead, business cards, rate sheets, and coupons to identify its taxi dispatch services. (*Id.* ¶¶ 12, 13.) American Taxi owns two federal registrations: (1) No. 3,058,900 for the service mark "American Taxi"; and (2) No. 3,116,379 for the logo "American Taxi Dispatch Inc.," (collectively, the "American Taxi Marks"). (*Id.* ¶ 19-20.) The '379 logo is reproduced below:



(R. 111-8, Ex. B to Am. Compl. at 3.) American Taxi spent approximately $1,584,440 in advertising over the last five years, building name recognition and goodwill. (R. 111-1, Am. Compl. ¶ 16.)

Defendant Metro incorporated its taxi business in Illinois on February 2, 2007. (*Id.* ¶ 2.) At that time, Defendant David Zaya ("Zaya") was the sole shareholder, officer, and director of Metro. (*Id.* ¶ 3.) Around February 15, 2007, Metro began advertising and using "American Metro Taxi" at taxi and limousine kiosks and boards at Chicago's O'Hare International Airport. (*Id.* ¶ 29.) Metro's signs contained the word "Metro" to the far right of "American" and "Taxi," using type setting, fonts, and colors to obscure differences between "American Taxi" and "American Metro Taxi." (*Id.* ¶ 29.) Exhibit H to American Taxi's Amended Complaint shows a photograph of one of Metro's advertisements at O'Hare:



(R. 111-9, Ex. H to Am. Compl. at 2.)

Individual Defendants Moris Zaya, Mihai Popescu, Romeo Warda, Frank Thud, Searg Ameba, Jay Abhishek, Ali Marwin, Edmon Gabrlia, David Ehein, Nikolai Tancheu, Thaer Seaman, Bergen Mecho, George Tancheau, Yousef Kitana, and Thaer Award (collectively, the "Driver Defendants") are taxicab and limousine drivers who received dispatch services from Metro. (*Id.* ¶ 5.) Plaintiff has yet to serve these Individual Defendants, and so they have not yet appeared in this case.

## II.   Procedural History

American Taxi filed its Complaint on May 9, 2007, (R. 1-1), and proceeded to serve the Defendants. Metro received its summons and Metro's counsel filed an appearance on May 25, 2007. (R. 5-1.) Metro moved to dismiss the original Complaint, and after the Court denied the Motion, Metro answered the original Complaint. (R. 10-1; R. 21-1.) Discovery commenced,

and American Taxi moved the Court to enter a preliminary injunction, which the Court granted in part on December 10, 2007. (R. 49-1.) American Taxi also moved to compel discovery responses, and when Metro failed to comply with the Court's Order compelling Metro's responses, American Taxi moved for sanctions. (R. 41-1; R. 51-1.) Concurrently, counsel for Metro sought leave to withdraw, which the Court granted on December 17, 2007. (R. 47-1; 50-1.) Metro then failed to respond to the Motion for Sanctions, and the Court granted the motion, striking Defendant's Answer and entering a default judgment against Defendant. (R. 56-1.)

Shortly thereafter, Metro retained new counsel and moved to vacate the default judgment. (R. 60-1.) The Court granted the motion, vacated the default judgment, and ordered Metro to comply with discovery and re-file its Answer by March 21, 2008. (R. 66-1.) American Taxi again filed a motion for sanctions. (R. 67-1.) On March 21, the Court ordered Defendant to file its response to Plaintiff's motion for permanent injunction and sanctions by March 28. (R. 70-1.) Defendant failed to file its response by March 28, and instead asked for an extension of time to file until April 11. (R. 75-1.) The Court reluctantly granted Defendant's motion for extension, noting that "Defendant is put on notice that the Court will not continue to accept his delayed filings. Defendant is expected to meet all court deadlines." (R. 80-1, 79-1.) On April 4, Defendant again asked the Court for an extension of time to respond to Plaintiff's motion. (R. 84-1.) The Court granted Defendant's motion for extension until April 18, noting that "[n]o further extensions will be granted." (R. 92-1.)

On April 17, counsel for Metro moved to withdraw and Metro again requested an extension of time to file its Response. (R. 100-1.) Metro then failed to respond by April 18, as ordered by the Court. American Taxi then amended its Complaint, (R. 111-1), and moved for

4

default judgment against Metro. (R. 117-1.) The Court granted the motion as to Metro and allowed American Taxi time to submit prove-up materials, thus precipitating the instant request for a permanent injunction, damages, and attorneys' fees. After reviewing the instant motion, on October 1 the Court requested that American Taxi file a supplemental affidavit providing evidence of consumer confusion. (R. 132-1.)

American Taxi's motion seeks: (1) entry of default against Defendant David Zaya and default judgment against Metro; (2) a permanent injunction against Metro and Defendant David Zaya; (3) an award of Metro's profits; and (4) attorneys' fees.

## ANALYSIS

**I.     Relevant Legal Standard**

"A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007); *see also O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993)*; Dundee Cement Co. v. Howard Pipe & Concrete Products Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). "The decision to enter default lies within the district court's discretion." *O'Brien*, 998 F.2d at 1398.

In addition, the Complaint provides a ceiling for available remedies. Federal Rule of Civil Procedure 54(c) provides that "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ.P. 54(c). Rule 54(c) merely formalized this well-settled rule. Wright & Miller, 10A Fed. Prac. & Proc. Civ.3d § 2688 (citing *Thomson v. Wooster*, 114 U.S. 104, 113-114, 5 S. Ct.

788, 29 L. Ed. 105 (1885)). This rule serves to protect defendants "who choose to default, relying on the damage ceilings contained in plaintiffs' prayers." *Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 611 (7th Cir. 1980).

## II.     Defendant David Zaya

On August 26, 2008, the Court referred the case to the calendar of Magistrate Jeffrey Cole for the purpose of holding a settlement conference between Plaintiff and Defendant David Zaya. Defendant Zaya agreed to participate in the Northern District of Illinois' Settlement Assistance Program for Pro Se Litigants. Accordingly, American Taxi's Motion offers insufficient basis, at this time, to find Defendant Zaya in default.

## III.    Injunctive Relief

As the Court has entered default, it accepts Plaintiff's trademark infringement and unfair competition allegations as true. The Court may not consider the merits of Plaintiff's claims because to do so would be to render an advisory opinion:

> the defendant has thus thrown in the towel [and] there is nothing left for the district court to do except enter judgment. The absence of a controversy in the constitutional sense precludes the court from issuing an opinion on whether the defendant actually violated the law. Such an opinion would be merely an advisory opinion, having no tangible, demonstrable consequence, and is prohibited.

*Chathas v. Local 134 Intern. Broth. of Elec. Workers*, 233 F.3d 508, 512 (7th Cir. 2000) (citing *Alliance To End Repression v. City of Chicago*, 820 F.2d 873, 875-76 (7th Cir. 1987)). But the Court must still analyze whether the facts alleged in the Complaint, when accepted as true, support the issuance of a permanent injunction. *e360*, 500 F.3d at 604.

At least three statutory regimes relied on by American Taxi support its request for

injunctive relief: (1) the Lanham Act, 15 U.S.C. § 1116; (2) the Illinois Deceptive Trade Practices Act, 815 ILCS 510/3, which supports injunctive relief for "[a] person likely to be damaged by a deceptive trade practice of another...upon terms that the court considers reasonable," 815 ILCS 510/3; and (3) the Illinois Consumer Fraud Act ("ICFA"), which provides that "in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate." 815 ILCS 505/10a.

To obtain injunctive relief, American Taxi must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *e360*, 500 F.3d at 604 (quoting *eBay Inc. v. MercExchange, L.L.C.*,__ U.S.__, 126 S. Ct. 1837, 1839, 164 L. Ed.2d 641 (2006)). In addition, "it is not necessary for plaintiff to prove actual damage or injury to obtain injunctive relief." 5 McCarthy on Trademarks and Unfair Competition § 30:10 (4th ed. 2008).

### A. Irreparable Injury and Inadequate Legal Remedy

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *Meridian Mut. Ins. Co.*, 128 F.3d at 1114; *Wesley-Jessen Division of Schering Corp.*, 698 F.2d 862, 867 (7th Cir. 1983)). Indeed, "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Id.* (quoting

7

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)).

Adequate facts exist in the record to support entry of a permanent injunction. In support of its infringement and unfair competition allegations, American Taxi filed an affidavit of Laurie Buer, its Advertising Manager. (R. 136-1.) Ms. Buer testified that she regularly visits O'Hare to monitor the appearance of American Taxi advertisements on O'Hare's boards and kiosks. (R. 136-1 at ¶¶ 3-5.) In April 2007, Ms. Buer noticed American Metro advertisements on the same boards and kiosks used by American Taxi. (*Id.* at ¶ 6.) She witnessed travelers approach the boards and kiosks and express confusion over "which 'American Taxi'" they should call. (*Id.* at ¶¶ 7-8.) In addition, Ms. Buer has fielded complaints from customers who engaged American Metro at O'Hare, believing that they had engaged American Taxi. (*Id.* at ¶ 9.) These complaints ranged from overcharging by drivers to the dirty appearance of taxis operated by American Metro. (*Id.*) Ms. Buer also recounted a recent complaint from a New York resident that clearly supports not just consumer confusion, but actual harm to American Taxi's reputation as well. (*Id.* at ¶ 10.) In the letter, attached to Ms. Buer's affidavit, the traveler states that on a July 24, 2008 trip to Chicago, his hotel recommended that he use American Taxi from O'Hare. Upon arrival at O'Hare, he called the dispatch for "American Taxi." The taxi that drove him to his hotel overcharged him by approximately $18. The receipt for the trip, attached to the letter, shows that the traveler was actually overcharged by "American Metro Taxi & Limo," and not Plaintiff American Taxi:

> A
> AMERICAN METRO
> TAXI & LIMO
> Toll Free 866-571-8294   Tel: 630-671-0164
> Time_____   Date 7/24/08
> Received From _____
> Cab Fare From O'H
> To Oak Brook
> Driver Mack
> Cab No. 53   Amount 49
> Thank you for your patronage

(R. 136 at p. 7.) The letter demonstrates that Metro's name confused the traveler, who, as a result, mistakenly believed that American Taxi had overcharged him. According to the Affidavit, this letter is just one example of consumer complaints that evidence confusion. Ms. Buer's affidavit and the attached letter thus provide direct evidence of actual consumer confusion and harm to American Taxi's reputation. As the Seventh Circuit has repeatedly held, evidence of actual confusion is one of the most important considerations in evaluating the likelihood of consumer confusion. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000); *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989); *see also Int'l Kennel Club*, 846 F.2d at 1090 (holding that evidence of actual confusion accumulated during defendant's relatively brief use of mark between the end of March and mid-June of 1986 was entitled to substantial weight); *see also* 3A Callmann on Unfair Competition, Trademarks & Monopolies § 21:64 (4th ed. 2008) ("[A]ctual confusion is the best evidence of likelihood of confusion."). In addition, American Taxi has no control over Metro's efforts to advertise its services at O'Hare International Airport using marks confusingly similar to the American Taxi

Marks.  Nor does American Taxi have control over the quality of Metro's services.  Consequently, the Court finds that the harm to American Taxi's reputation weighs in favor of granting an injunction.

### B. Balance of Hardships / Public Interest

Considering the balance of hardships, the Court notes that a narrowly tailored permanent injunction will not force Metro out of business, but rather require Metro to proceed under a different name.  In addition, American Taxi notes in its Motion that Defendant Zaya has already "asserted that Defendant American Metro has been 'dissolved' as an Illinois corporation." (R. 129-1; Pl.'s Mot. ¶ 4.)  It is not clear whether this is true, given that American Metro operated at least as recently as July 24, 2008, according to Plaintiff's affidavit.  (R. 136-1 at ¶ 10.)  Regardless, American Taxi has a strong interest in its Marks and associated goodwill.  Moreover, the public has an interest "in knowing with whom they do business," *Re/Max*, 272 F.3d at 433.  The public also has an interest—based on safety concerns—in obtaining reputable taxi and limousine dispatch services from one of the country's busiest airports.  Accordingly, these factors weigh in favor of granting a permanent injunction of the scope requested by Plaintiff's Amended Complaint.

### C. Permanent Injunction

This matter having come before the Court on Defendant's default and the Court entering default judgment on Counts I-VII of Plaintiff American Taxi's Amended Complaint, and the Court now finding that American Taxi will suffer irreparable harm if an injunction is not entered, that no adequate remedy at law exists, and that the public interest and the relevant balance of hardships are in American Taxi's favor,

IT IS HEREBY ORDERED that defendant American Metro Taxi & Limo Company, its officers, agents, servants, employees, affiliates, successors and assigns (collectively referred to as "Metro"), and any and all persons acting in concert or participation with them who receive actual notice of this Order, are hereby permanently enjoined and restrained:

(1) from operating under or using, in any facet, the name "American Taxi" or any name confusingly similar to "American Taxi," including, but not limited to, "American Metro Taxi";

(2) from using, adopting, and displaying colors, shapes, designs, patterns, and lettering similar to the trade dress of American Taxi; and

(3) from maintaining or listing its business telephone number under the name "American Taxi," or any name confusingly similar to "American Taxi," including, but not limited to, "American Metro Taxi".

The Court notes that "an injunction binds not only the parties to the injunction but also nonparties who act with the named party." *S.E.C. v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008).

## IV. Damages

Plaintiff's Lanham Act claims also support an award of Defendant's profits. 15 U.S.C. §1117. Section 1117 provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Accordingly, the Seventh Circuit recently held that "[i]t is enough that the plaintiff proves the infringer's sales. The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales." *WMS Gaming Inc. v. WPC Productions Ltd.*, __F.3d__, No. 07-3585, 2008 WL 4119013, at *6 (7th Cir. Sept. 8, 2008). In *WMS Gaming*, the Seventh Circuit reversed a district court that reduced the award of profits requested by a trademark infringement plaintiff following the defendant's default. Specifically, WMS proved the

11

defendant's sales by reference to defendant's annual reports published on the defendant's website. *Id.* at *2. The district court noted that the annual reports did not attribute revenue specifically to infringing products, and so the district court reduced the award to what it considered reasonable based on the evidence. The Seventh Circuit reversed, holding that once a trademark plaintiff establishes the defendant's sales, it is entitled to an award based on those sales unless the defendant can prove appropriate reductions:

> [t]he burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer.

*WMS Gaming*, 2008 WL 4119013 at *6 (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07, 62 S. Ct. 1022, 86 L. Ed. 1381 (1942)). Accordingly, the Seventh Circuit held that "when a trademark plaintiff offers evidence of infringing sales and the infringer fails to carry its statutory burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales." *Id.* at *7.

Here, American Taxi seeks "American Metro and Defendant Zaya's profits derived from their infringement."[1] To prove Metro's sales, American Taxi provided a copy of Metro's 2007 United States Corporation Income Tax Return that Metro produced earlier in the litigation. (R. 129-7.) As noted in Plaintiff's Motion, Line 1a of Metro's return, entitled, "Gross receipts/sales," states $76,833. (R. 129-1 at 3; R. 129-7 at 1.) Plaintiff continues on to note that a subsequent line item, under the heading "Other Deductions," lists $56,416 for "DRIVERS

---

[1] As noted above, the Court declines to enter judgment as to David Zaya, pending resolution of his participation in the Settlement Assistance program.

CONTRACTORS," and hypothesizes that this number actually represents payments *from* drivers for dispatch service, rather than payments to drivers, as the heading "Other Deductions" would suggest. (R. 129-1 at 4.) The Court is reluctant to read a deduction as income. Nonetheless, Metro's own document establishes gross receipts/sales of $76,833. Accordingly, "[p]laintiffs here proved defendants' sales, using defendants' own words. The burden then shifted, requiring defendants to prove costs or deductions." *WMS Gaming*, 2008 WL 4119013, *7 (quoting *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985)). In the absence of any evidence as to Metro's profits, the Court must rely on evidence of sales, regardless of the "windfall to the trade-mark owner." *WMS Gaming*, 2008 WL 4119013 at *6) (quoting *Mishawaka*, 316 U.S. at 206-07, 62 S. Ct. at 1025. As Metro is responsible for the lack of certainty as to its profits, to hold otherwise would improperly give a windfall to Metro. *Id.*

## V. Attorneys' Fees

The Lanham Act allows for fees in "exceptional" cases, 15 U.S.C. § 1117(a), which encompasses cases in which the acts of infringement are "malicious, fraudulent, deliberate or willful." *BASF*, 41 F.3d at 1099 (quoting *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir. 1989)). The Illinois Deceptive Trade Practices Act provides that "[c]osts or attorneys' fees or both may be assessed against a defendant only if the court finds that he has wilfully engaged in a deceptive trade practice." 815 ILCS 510/3. Under the ICFA, however, a plaintiff need not make a threshold showing of bad faith in order to recover attorney fees. *Krautsack v. Anderson*, 223 Ill.2d 541, 559-560, 861 N.E.2d 633, 64, 308 Ill. Dec. 302, 316 (2006); *see also* 815 ILCS 505/10a (the district court "may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."). As such, the Court need

not make a specific finding of willfulness in order to award attorneys' fees. Regardless, accepting the Complaint's allegations as true, as the Court must in the context of default judgment, American Taxi's allegations of willfulness support a finding that this case is "exceptional" and justifies awarding attorneys' fees. *See e360*, 500 F.3d at 602 (allegations in Complaint accepted as true); *see, e.g.*, *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (affirming grant of attorneys' fees from default judgment where district court relied on Complaint and made no specific finding that the case was "exceptional" under 15 U.S.C. § 1117).[2]

Counsel's request for legal fees, however, is less than a model of clarity. A district court is not required to "wade through the trustee's voluminous time records to rescue the compensable time from the sea of non-compensable hours." *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir. 1987). Although the Court appreciates that American Taxi attached redacted legal bills, some line items include insufficient explanation. In addition, a few line items highlighted by counsel appear to relate to other matters. Accordingly, the Court orders Defendant American Metro Taxi & Limo Company to pay attorneys' fees in the amount of $32,284.75.

## CONCLUSION

For the foregoing reasons, the Court enters a permanent injunction against Defendant

---

[2] In other contexts, the Seventh Circuit has recognized that willful allegations in the Complaint are taken as true on default judgment. *See Hill v. Longini*, 767 F.2d 332, 334 (7th Cir. 1985) ("Even if it were so construed and a default judgment had been entered against Glowacki's clients, the allegation that they engaged in willful misconduct would be deemed established, thereby relieving the municipality of its obligation to indemnify.").

American Metro Taxi & Limo Company, its officers, agents, servants, employees, affiliates, successors and assigns, as stated in Section III.C., above. In light of Metro's failure to adduce evidence of its profits attributable to infringement, the Court grants American Taxi's motion and awards $76,833, representing Metro's sales, and $32,284.75 in attorneys' fees.

DATED: October 20, 2008                    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge